### JOSEPH C. POTTS *v.* ALEXANDER H. ARNOW and others.

R., in conveying to A. a vacant lot, of fifty feet, fronting on Hanover street, Trenton, described it in the deed as commencing 225 feet east from the corner of Montgomery street; and A., on the same day, gave a mortgage to R. on the lot by the same description. Afterwards, R. conveyed to C. a vacant lot of fifty feet, fronting on Hanover street, described in the deed as commencing 250 feet east from the corner of Montgomery street; thus conveying to C. twenty-five feet of the fifty feet he had before conveyed to A. C. afterwards conveyed the western half of the lot described in the deed to him to McK., and McK. built a house on it; A. living in Trenton, and being aware that McK. was building on the said western half, and both supposing that A.'s lot of fifty feet lay west of the twenty-five feet on which McK. was building. R. owned another vacant lot, of twenty-five feet, commencing 200 feet from the corner of Montgomery street, at the time of his said conveyance to A., and continued to own it at the time of the decision of the cause. A., after R.'s deed to him, gave to L. a mortgage on his lot, by the same description by which it was conveyed to him; which mortgage was assigned to J. C. P., the complainant, who exhibited his bill for foreclosure thereon, making R., the first mortgagee, a defendant. The testimony showed that the mistake was in the deed to A., and that A. intended to buy, and R. intended to convey to A. the two most westerly lots of R., of twenty-five feet each; and R., after the discovery of the mistake, had offered to correct it by conveying to A. his most westerly lot of twenty-five feet. The Chancellor directed that R.'s most westerly lot, commencing 200 feet east of Montgomery street, be sold, and that R. give a deed for it to the purchaser; and that the next lot east of it, of twenty-five feet, be also sold, under the mortgage held by the complainant; and that the proceeds of both lots be applied to pay the mortgages, in their order.

The facts of the case are stated in the opinion delivered by the Chancellor.

*Joseph C. Potts, pro se.*

*P. D. Vroom* for the defendant McKelway.

THE CHANCELLOR. On the 22d of November, 1839, Redmond and wife conveyed to Arnow, for $1000, a lot in Trenton, described as beginning on the north side of Hanover street, 225 feet east from the corner of Montgomery street; thence easterly along Hanover street, 50 feet, &c.

On the same day, Arnow gave Redmond a mortgage on the said lot by the same description, for $425.

On the 14th of December, 1841, Arnow gave to Samuel Loyd a mortgage for $500 on the said lot by the same description. On the 10th of March, 1843, this mortgage was assigned to Joseph C. Potts, the complainant, who has filed a bill of foreclosure thereon.

On the 10th of January, 1840, Redmond and wife conveyed to William G. Cook, for $1,000, a lot in Trenton, beginning on the north side of Hanover street, at a point 250 feet east from the corner of Montgomery street, thence running eastwardly along Hanover street, 50 feet, &c.; thus conveying to Cook 25 feet of the 50 feet which he had before conveyed to Arnow. This deed from Redmond and wife to Cook contained full covenants. Cook conveyed to Grant 50 feet by the same description as in the deed from Redmond and wife to Cook. Grant then conveyed the western half of the said 50 feet; and this western half came, by mesne conveyances, to McKelway; the deed to him bearing date October 23, 1843. The description in the deed to McKelway is as follows: "all that certain lot in Trenton, (being 250 feet east of Montgomery street,) in width 25 feet, on the northerly side of Hanover street, &c., lying between a lot of Alexander H. Arnow, on the west side thereof, and a lot of William Grant, on the east side thereof; showing that it was still supposed that Arnow's 50 feet lay west of the 25 feet conveyed to McKelway; for if Arnow's lot runs 50 east from a point 225 feet east from the corner of Montgomery street, then the deed from Redmond to Cook for 50 feet, commencing at a point 250 feet east from Montgomery street, would only convey to Cook 25 feet, if the description in the deed to Arnow is to be adhered to.

McKelway built a house on the lot described or supposed to be described in the deed to him; and, on the 12th of July, 1844, gave a mortgage on said lot to Samuel B. How, for $1,100.

On the 25th of January, 1840, Robert F. Stockton, by a deed of release, reciting that Redmond and his wife, by mortgage dated September 15, 1835, had mortgaged, for $17,000, to Stockton, certain lands of which the lands described in the release was a part, released to Redmond all that part of the mortgaged premi-

ses commencing on the north side of Hanover street, at a point 50 feet east of the corner of Montgomery street, and running thence easterly, along Hanover street, 250 feet, thence, &c. The release says it was made at Redmond's request.

This gives 300 feet from the corner of Montgomery street, and this land was no doubt released to that point for the reason that Redmond had sold to that point. The deed from Redmond to Cook commences 250 feet east of Montgomery street, and runs 50 feet east of that starting point, *i. e.*, up to 300 feet east of Montgomery street.

The title to the lot of 25 feet, commencing at a point 200 feet east of Montgomery street, being a part of the premises conveyed by Stockton to Redmond, and mortgaged by Redmond to Stockton, and released by the said deed of release, *is still in Redmond*; *i. e.*, the description in the deed from Redmond to Arnow does not cover it; and Redmond has never conveyed it to any other person.

There can be no doubt that Redmond intended to convey to Arnow, and supposed he conveyed to him, the 50 feet west of the 50 feet he conveyed to Cook; and the fact that McKelway was permitted to build on the lot he bought shows, that Arnow, who lived in Trenton, supposed he had bought the 50 feet west of the lot on which McKelway built. All the lots were in common, and if there was any difference in the value, the probability is, that the more westerly the lot was situated the more valuable it was, the city lying west of the lots.

The whole difficulty, I have no doubt, has grown out of a misdescription in the deed from Redmond to Arnow. And I see no way of getting through the case satisfactorily but by reforming that deed, or doing something equivalent to it.

I think the Court should direct the 25 feet lot commencing at 200 feet east from Montgomery street to be sold, and that Redmond give a deed for it to the purchaser, and that the next lot east of it, of 25 feet, be also sold, under the mortgage from Arnow, now held by the complainant in this case, and that the proceeds of these two lots be applied to pay the mortgages in their order.

This will make every thing right.   To attempt to get through leaving the first error uncorrected will make every thing wrong.

If the pleadings are not in a shape to enable the Court to give relief in the way suggested, there should be a cross bill filed.

Suppose the case to be simply this :  By mistake McKelway built a house on Arnow's lot, McKelway having bought and got a deed for the lot he built on, and Arnow standing by, and both supposing that Arnow's lot was not the lot built on, but the lot next to it, should Arnow, in equity, have the house ?

Should not McKelway be permitted to take the house off the lot ?  If so, this determines in his favor the question involved. The equity does not depend on the greater or less facility with which the house could be removed.

The question whether the mistake was in the first deed is the same as if the second deed had not been given.   The fact that the second deed was for two lots, one of which was covered by a former deed,  does not prove that the mistake was in the second deed and not in the first.

I think there is enough in the case to show that the mistake was in the first deed without the testimony of Redmond.

If Arnow had accepted the deed which Redmond prepared and tendered to him, for lots 32 and 33, instead of lots 33 and 34, after the mistake was discovered, all would have been right. He ought to have done so.

All further directions, or the consideration whether any further directions are necessary, may be reserved.